## WOODSON v. THE STATE.

1.  Where one is tried upon an accusation charging him with the offense defined
    by the Penal Code, § 601, and the evidence fails to show that he solicited or
    procured any resident of this State to remove from the same with a design
    to settle elsewhere, or that he attempted so to do, he can not be lawfully
    convicted.
2.  Although one count in an accusation may charge the accused with illegally
    carrying on business as an emigrant agent, in a named county, "without
    first going before the ordinary of said county and registering his name as such
    emigrant agent, and his place of business, and without first paying the tax of
    $500.00 as required by law, to the tax-collector of said county," yet if this
    general charge is followed by matter descriptive of the act which the ac-
    cused did, which negatives the precedent general averment, such count does
    not charge the accused with carrying on business as an emigrant agent in vio-
    lation of the general tax act of 1898.
3.  As the evidence wholly failed to establish the only offense charged in the accu-
    sation, the judgment of the superior court overruling the certiorari was
    erroneous.

Argued February 18, — Decided March 11, 1902.

Certiorari.   Before Judge Candler.   Newton superior court.
January 1, 1902.

*J. M. Pace* and *F. C. Foster,* for plaintiff in error.
*W. T. Kimsey, solicitor-general,* and *J. F. Rogers,* contra.

FISH, J.   Porter Woodson was tried in the county court of New-
ton county, before the judge of said court without the intervention
of a jury, upon an accusation made by R. L. Loyd, tax-collector of
the county, charging him with having committed a misdemeanor.

The particular offense with which he was charged was set forth as follows: "For that the said Porter Woodson, on the 1st day of February, 1900, in the county aforesaid, did solicit and procure emigrants, or did attempt to do so, without first procuring a license as provided by law; and he further charges that said Porter Woodson as the agent or employee of one Williams, an emigrant agent, did carry on said business as an emigrant agent and engage in said county illegally, without first going before the ordinary of said county and registering his name as such emigrant agent and his place of business, and without first paying the tax of $500.00 as required by law, to the tax-collector of said county. The said Porter Woodson as the agent or employee of said Williams having solicited or procured, or attempted to do so, emigrants to go from this State to some place out of this State, contrary to the laws of said State," etc. The judge found the accused guilty, and passed sentence upon him accordingly; whereupon he carried the case by certiorari to the superior court, where the certiorari was overruled and the judgment of the county court affirmed. To this judgment he excepted and brought the case to this court for review. In the petition for certiorari complaint was made of the overruling of a demurrer, which raised the question of the constitutionality of the law upon which the accusation was based, but this point was abandoned in this court; and the only ground of the petition for certiorari which is relied upon here is, that the conviction of the accused was without evidence to support it and contrary to law.

1. It is contended by the plaintiff in error that the only offense with which he was charged was a violation of the Penal Code, § 601. That section reads as follows: "Any person who shall solicit or procure emigrants, or shall attempt to do so, without first procuring a license as required by law, shall be guilty of a misdemeanor." It is contended by the State that the accused was not only charged with a violation of this section of the Penal Code, but also with having violated certain provisions of the general tax act of December 22, 1898. (Acts of 1898, p. 21.) The provisions referred to are the tenth paragraph of section 2, which imposes a specific tax in the following language: "Upon each emigrant agent, or employer or employee of such agents, doing business in this State, the sum of five hundred dollars for each county in which such business is conducted;" and section 4, which provides that before

persons upon whom such tax is imposed "shall be authorized to carry on said business they shall go before the ordinary of the county in which they propose to do business and register their names, places of business, and at the same time pay their taxes to the tax-collector," and that "any person failing to register with the ordinary, or, having registered, failing to pay the tax as herein required, shall be liable to indictment for misdemeanor, and, on conviction, shall be fined not less than double the tax, or be imprisoned as prescribed by section 1039 of volume III of the Code of 1895, or both, in the discretion of the court." It is upon this latter contention that counsel for the State mainly bases his argument that the evidence was sufficient to sustain the conviction.

Granting that there is a license required by law of one who solicits or procures emigrants, or attempts to do so, before a conviction under the Penal Code, § 601, could be sustained, it would be necessary for the evidence to show that the accused did solicit or procure emigrants or attempt to do so. In *Varner* v. *State*, 110 *Ga.* 595, the plaintiff in error had been convicted in the court below of a violation of this section of the Penal Code, upon proof showing that he "had made an arrangement with two persons, under which they were to go to the State of Florida and there to be employed in cutting turpentine boxes;" and "that the purpose of each of these persons was to go to the State of Florida to work, and that neither had any present intention of taking up his residence there." This court held that, as an emigrant is "one who quits his country for any lawful reason, with a design to settle elsewere, and takes his family and property with him," the conviction could not be sustained, as the evidence failed to show that the persons whom the accused procured to go from this State to the State of Florida were emigrants. There is not a particle of evidence in the present case that the accused, or even Williams, whose agent or employee he was, solicited or procured any one to go from this State for the purpose of making his domicile in another State, or attempted to do so. It is, therefore, clear that the conviction can not be sustained under the Penal Code, § 601.

2. After a careful consideration of the matter, we have reached the conclusion that the only offense with which the accused was charged was that defined by the above-mentioned section of the Penal Code. The portion of the accusation upon which is based

the contention of counsel for the State, that the accused was charged with a violation of the general tax act of 1898, is as follows: "and he further charges that said Porter Woodson as the agent or employee of one Williams, an emigrant agent, did carry on said business as an emigrant agent and engage in said county illegally, without first going before the ordinary of said county and registering his name as such emigrant agent, and his place of business, and without first paying the tax of $500.00 as required by law, to the tax-collector of said county." This language, standing alone, might, in the absence of a special demurrer, be sufficient to charge a violation of the above-mentioned tax act. It does not, however, stand alone, but is immediately followed by these words: "The said Porter Woodson as agent or employee of said Williams having solicited or procured, or attempted to do so, emigrants to go from this State to some place out of this State." Here the act which the accused, as the agent or employee of Williams, is charged to have done is set forth and described, and that act is "having solicited or procured, or attempted to do so, emigrants to go from this State to some place out of this State." This did not constitute a violation of the particular provisions of the general tax act of 1898 upon which the State relies. Those provisions are only violated when one, without first complying with the requirements of the statute, hires laborers in this State to be employed beyond the limits of the same. They are not violated when one unlawfully solicits or procures, or attempts to do so, "emigrants to go from this State to some place out of this State." *Williams* v. *Fears*, 110 *Ga.* 584; *Varner* v. *State*, supra. The descriptive words in question can not be rejected as surplusage. Bishop says: "The doctrine is, that unnecessary matter, of a sort or so averred as to negative the offense meant, or otherwise to show the prosecution not maintainable, can not be rejected as surplusage." 1 Bish. Crim. Proc. § 482. The author illustrates this principle by the ruling made in Rex *v.* Murray, 5 Car. & P. 145, "where at the trial the embezzlement count failed because the offense as proved was larceny, and a count following for larceny stated it to have been committed 'in manner and form aforesaid,'" and "it was held that these quoted words could not be rejected, so there could be no conviction." There is a striking similarity between that case and the one which we have under consideration. There, in the count for larceny, it was alleged

to have been committed "in manner and form aforesaid," and as
these words were held to refer to the "manner and form" set out
in the count for embezzlement, the count for larceny was held to
be bad.    Here what may be termed the first count is for a viola-
tion of the Penal Code, § 601, and the second count is relied on as
charging a violation of certain provisions of the general tax act of
1898; but the act described and particularized in this last count is
one which, if unlawfully done, would constitute the offense set
forth in the first count, and not the one which this last count at-
tempts to charge.    In State *v.* Dowd, 95 Mo. 163, it was held:
" An indictment for obtaining a deed by false pretenses, which
charges it to be the property of certain persons, but alleges that
they had 'executed, signed, sealed, acknowledged, and delivered it,
in due form and manner of law,' is insufficient. · After the deed was
delivered it ceased to be the property of those executing it, and it
was impossible to have defrauded them by reason of obtaining it
by false pretenses." In *Fulford* v. *State,* 50 *Ga.* 591, the indict-
ment charged the defendant on trial with the offense of assault
with intent to murder, as principal in the second degree, in being
present, aiding and abetting the person charged as principal in the
first degree, " by pushing, striking, assaulting, and threatening the
said J. A. Conway," the person upon whom the assault with intent
to murder was alleged to have been committed.    It was held that
while " it was not necessary that the pleader should have stated
the acts of the defendant which constituted his ' aiding and abet-
ting,' or to define how it was done," yet as the prisoner was charged
with aiding and abetting by "pushing, striking, assaulting, and
threatening," these words, being descriptive of his acts which con-
stituted the offense of which he was accused, could not, on motion
of the prosecuting counsel, without the consent of the prisoner, be
stricken from the indictment as surplusage.    The effect of the rul-
ing was to confine the prosecution, in proving that the accused
aided and abetted the alleged principal in the first degree, to proof
showing that he aided and abetted in the way charged in the in-
dictment.    In the present case, the words, " having solicited or pro-
cured, or attempted to do so, emigrants to go from this State to some
place out of this State," are descriptive matter, which is a part of
an entire averment.    This being so, this descriptive matter can not
be omitted, or rejected, as surplusage, without omitting, or reject-

ing, the entire averment of which it forms a part. 1 Bish. New Crim. Proc. § 485, 1, 2. If the entire averment is rejected, then, of course, the accused would not be charged with the offense defined by the general tax act of 1898. If the entire averment stands, the same result follows, because the words descriptive of the act, or acts, wherein the offense is alleged to have consisted show that what the accused is alleged to have done did not constitute such offense.

3. As the evidence wholly failed to establish the only offense charged in the accusation, the judgment of the superior court overruling the certiorari was erroneous. .

*Judgment reversed. All the Justices concurring, except Little, J., absent.*